IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| JEFFREY ADAMS, | * |
| Plaintiff, | * |
| vs. | * |
| COLUMBUS CONSOLIDATED GOVERNMENT, COLUMBUS POLICE DEPARTMENT, MAYOR TERESA TOMLINSON, TOM BARRON, CHIEF RICKY BOREN, ALTON BRUNDAGE, WILLIAM TURNER, TONY COOPER, JAMES POPE, RALPH DOW, FRED BLACKMON, LEMUEL MILLER, JENNIFER GARDNER, SHERMAN HAYES, JOSEPH BRIDGES, TRICIA WOLFLEY, JOSHUA BROWNLEE, JULIUS GRAHAM, DEBRA BAILEY, and RONNIE HASTINGS, | * * * * * * * * CASE NO. 4:14-CV-303 (CDL) |
| Defendants. | * |

O R D E R

Jeffrey Adams, a Columbus, Georgia police officer, filed this action *pro se* alleging that he was subjected to employment discrimination based on his race and age.  He asserts claims against the Columbus Consolidated Government ("CCG") and the Columbus Police Department ("CPD") for violating the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Civil Rights Act of 1866, 42 U.S.C. § 1981; and the Equal Protection Clause of the Fourteenth Amendment.  He

also asserts federal and state law claims against various municipal officers in their individual capacities. Presently pending before the Court is Defendants' motion for summary judgment. For the reasons explained below, the Court grants Defendants' motion for summary judgment (ECF No. 27).[1]

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Adams, the relevant portions of the record reveal the following.

---

[1] Adams filed a motion to amend his complaint (ECF No. 28). The Court considered the allegations contained in his proposed amended complaint in ruling on Defendants' motion for summary judgment, and those additional allegations do not change the outcome.

Adams is a fifty-three-year-old black man. He was hired by the Columbus Police Department in December 2005. Problems arose several years later, in June 2009, when Adams was assigned to Sergeant Alton Brundage's squad. Adams alleges that, from his first day on the new squad, Brundage and Captain James Pope had a plan to undermine him based on his race and age.

About a month after being transferred to Brundage's squad, in July 2009, Adams met with Brundage and several other officers regarding the stigma Adams felt had been put on him since he joined Brundage's squad. Specifically, Adams complained about a coworker calling him "slow." Adams did not complain about race or age discrimination during this meeting.

Several months later, in November 2009, Brundage and Pope issued Adams a letter of counsel with constructive criticism. Adams believes that he did not deserve the criticism. Adams never complained to anyone at CPD or CCG about the letter of counsel being discriminatory.

The following year, on June 24, 2010, Adams complained to Brundage about a message a coworker posted on Facebook referring to Adams as a "lazy turd." Adams told Brundage that he thought his coworker made the comment out of age or race-based animus. Adams asserts that this complaint was protected activity. Adams also contends that Brundage, Pope, Captain William Turner, and

3

Lieutenant Ralph Dow did not act in accordance with CCG policy in responding to Adams's complaint about the Facebook message.

Several months later, in March 2011, a supervising officer complained to Brundage about Adams taking an excessive amount of time to do a task.  According to the officer, the task should have taken fifteen minutes, but it took Adams over an hour.  Brundage gave Adams a written reprimand for spending an unnecessary amount of time on a task.  Adams contends that he took a reasonable amount of time to complete the task and that Brundage should not have reprimanded him.  Adams did not complain to anyone at CPD or CCG about race or age discrimination in relation to this incident, but he now asserts that the written reprimand was an act of discrimination.  He also asserts that Brundage reprimanded him in retaliation for his complaint nearly nine months prior about the Facebook message referring to him as a "lazy turd."

A few months later, on May 19, 2011, Adams responded to a call regarding an altercation involving a group of women.  Adams arrived at the scene, resolved the altercation, and arrested one woman.  Brundage then arrived at the scene and determined that probable cause existed to arrest another woman.  Brundage explained to Adams why probable cause existed for the arrest and ordered Adams to seek a warrant.  Adams refused, stating that he believed there was not probable cause for an arrest and that any

4

arrest would constitute false imprisonment. Brundage again ordered Adams to seek a warrant; Adams again refused. Later that day, Brundage and Pope met with Adams and suspended him for one day without pay for failing to obey orders. Adams testified that during this meeting, Adams tried to explain his actions, but Pope said: "Be quiet, stop talking, or I'll up this to three days [of suspension]." Pl.'s Dep. 223:16-17, ECF No. 26. Adams contends that Pope violated his First Amendment right to free speech by instructing him to "stop talking." *Id.*

A few days later, on June 2, 2011, Adams filed a Fair Treatment Report asserting that Brundage and Pope discriminated and retaliated against him when they suspended him for one day without pay. Adams asserts that a few days after he filed the Report, Turner and Major Julius Graham tried to persuade Adams to withdraw his Report. Adams refused. He was then assigned to report writing for the following day. Report writing is a task that is within Adams's normal job duties, but he considers the assignment a punishment for refusing to withdraw his Fair Treatment Report.

On August 31, 2011, CCG Human Resources Director Tom Barron sent a notice to Adams stating that the Human Resources Department had concluded its investigation into Adams's Fair Treatment Report and found that Pope and Brundage did not discriminate against Adams or retaliate against him for

5

complaining of discrimination. The Columbus Police Department's Office of Professional Standards also conducted an independent investigation into Adams's claims and sustained the disciplinary action against Adams and exonerated Brundage and Pope. Adams contends that the Office of Professional Standards did an inadequate investigation.

On November 1, 2011, Brundage completed Adams's annual performance review and gave him the rating of "meets standards." Brundage Aff. Exh. U, Employee Achievement Assessment, ECF No. 27-7 at 71. Brundage gave this rating, which is one below the highest rating, "exceeds standards," due to Adams's two disciplinary actions (the written reprimand and one-day suspension).

Five days later, on November 6, 2011, Adams filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation.

Adams contends that his squad retaliated against him for complaining of discrimination by not being eager to respond to his request for backup on January 4, 2012. Adams also claims that his coworkers retaliated against him by conspiring to have him charged with committing a false arrest. Adams was exonerated of the false arrest allegations.

Approximately one month later, on February 12, 2012, Adams participated in a one-day training program. Adams failed to

meet the minimum performance standards during the training. Adams was the first person to fail the training program in the ten years it had been in existence. Accordingly, Chief of Police Boren decided that Adams needed to repeat the training. Adams contends that Boren made this decision to discriminate against him. Adams had a meeting with Major Freddie Blackmon, Jennifer Gardner, and Tony Cooper regarding the training class. Blackmon explained to Adams why he failed the class. Adams asserts that Blackmon's explanation was a pretext for retaliation. Adams later repeated the training and passed.

On December 18, 2012, Adams sent an inter-office communication with the subject line "Fair Treatment Report" to Chief Boren. In the report, Adams complained that he was discriminated against when he was required to repeat the training session. Adams also complained about a comment Cooper made to him regarding his use of sick days. Chief Boren found no violation of CPD policy.

On April 12, 2012, Adams submitted a letter to the EEOC regarding ongoing race discrimination and retaliation for engaging in protected activity.

In December 2014, Debra Bailey and Ronnie Hastings prepared Adams's annual performance review and gave him a score of "meets standards." Adams contends that this rating was discriminatory and that he deserved a rating of "exceeds standards." Adams

7

also complains that the report said: "since taking over as an acting supervisor of squad #13 in February I have seen a drastic improvement in Corporal Jeff Adams ability to perform his duties." Mot. For Leave to Am. Compl. 5, ECF No. 28.  Adams believes that this statement suggests his prior performance was deficient.  He contends that the comment was an act of racial discrimination.  Adams filed a Fair Treatment Report complaining about this performance review.

The next year, in January 2016, Bailey and Hastings gave Adams a performance review rating of "exceeds standards."  This is the highest rating, but Adams complains that the numerical score associated with the rating was "border line" with the "meets standards" rating.  *Id.* at 6.  Adams also complains that the performance review states: "Over the past year I have noticed a positive change in Corporal Adams, and the way he interacts with the squad"  *Id.*   Adams contends that this statement implies that his past performance was not positive. On February 18, 2016, he complained about his performance review rating.  Bailey and Hastings then raised his score.  Adams, however, is still unsatisfied with his score.

DISCUSSION

Preliminarily, the Court notes that the Columbus Police Department is not a legal entity capable of being sued in this action.  *See, e.g.*, *Lovelace v. Dekalb Cent. Prob.*, 144 F. App'x

8

793, 795 (11th Cir. 2005) (per curiam) (affirming dismissal of a § 1983 action against the DeKalb County, Georgia police department because it was not a legal entity subject to suit under Georgia law). Accordingly, any claims against the Columbus Police Department are dismissed.

It is also undisputed that Adams did not allege age discrimination in his charge of discrimination with the EEOC. *See* Pl.'s Dep. Ex. 3, Letter from Adams to EEOC (Nov. 6, 2011), ECF No. 26-3 (alleging race discrimination and retaliation based on complaints of race discrimination); Pl.'s Dep. Ex. 5, Letter from Adams to EEOC (Apr. 12, 2012), ECF No. 26-5 (same); Defs.' Mot. for Summ. J., Attach. 12 Letter from Adams to EEOC (June 11, 2013), ECF No. 27-12 (alleging harassment based on race and "National origin of New Jersey"). And "[i]t is firmly established that, in order to bring an action for age discrimination or retaliation under the ADEA, a plaintiff must first file a timely charge of discrimination with the EEOC or appropriate state or local agency." *Sheffield v. United Parcel Servs., Inc.*, 403 F. App'x 452, 454 (11th Cir. 2010) (per curiam) (citing *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004)). "If a party fails to comply with the charge-filing requirement, he cannot assert a claim in court." *Id.*[2]

---

[2] A "plaintiff's judicial complaint is limited to 'the scope of the EEOC investigation which can reasonably be expected to grow out of the

Because Adams failed to comply with the charge-filing requirement regarding his age discrimination claim, Defendants are entitled to summary judgment as to that claim.

This leaves Adams's racial discrimination and retaliation claims. Those claims fail for many reasons, but they are fundamentally deficient because Adams has failed to produce any evidence from which a reasonable jury could conclude that any of Defendants' alleged adverse employment actions were motivated by race or retaliation. No direct evidence of race-based discrimination or retaliation exists, and Adams failed to point to any circumstantial evidence sufficient to create a genuine factual dispute. He pointed to no similarly situated person outside of his protected class who was treated differently under similar circumstances, and he failed to produce any other evidence from which it could reasonably be inferred that Defendants had a race-based or retaliatory motive when they took any of the actions about which Adams complains.[3] Accordingly,

---

charge of discrimination.'" *Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 F. App'x 586, 600 (11th Cir. 2008) (quoting *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th Cir.1994)). In his EEOC charges, Adams claimed that he was discriminated against only because of his race and in retaliation for complaining of racial discrimination. His claim of age discrimination could not "reasonably be expected to grow out of" the EEOC race discrimination charges. *Id.*

[3] The only comparator relied upon by Adams is a fellow employee, Officer Solt. Solt stopped to help a civilian driver who was on the side of the road. Solt called his supervisor and requested permission to call a tow truck for the driver. The supervisor instructed Solt to ask the driver if they had called a tow truck first. Solt did not

Defendants are entitled to summary judgment as to all of Adams' claims.[4]

CONCLUSION

For the reasons stated above, the Court grants Defendants' motion for summary judgment as to each of Adams's claims.

IT IS SO ORDERED, this 22nd day of July, 2016.

<u>S/Clay D. Land</u>
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE

---

obey and called a tow truck without speaking to the driver first. As a result, Solt was suspended for "Actions of Insubordination." On appeal, the suspension was reduced to a written reprimand. Adams, by contrast, was suspended for "Neglect or Dereliction of Duty" after he *twice* refused his superior's command to seek a warrant for an arrest. The Eleventh Circuit "require[s] that the quantity and quality of the comparator's misconduct be *nearly identical* to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (emphasis added). Solt's misconduct—calling a tow truck before confirming that the driver had not already called a truck—is not "nearly identical" to refusing to seek a warrant for an arrest. *Id.* Additionally, Adams and Solt were charged with violations of different portions of CPD policy; Adams was suspended for "Neglect or Dereliction of Duty" and Solt was punished for "Actions of Insubordination." Based on these facts, the Court concludes that Adams and Solt are not similarly situated. As to his retaliation claim, most of Adams's complaints do not amount to "materially adverse actions." *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (explaining "materially adverse" standard). And for those that may, Adams has not pointed to sufficient evidence to create a genuine factual dispute that a causal connection exists between any good faith complaints of discrimination and an adverse employment action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013) (explaining causation requirement for Title VII retaliation claims); *see also Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1213-14 (11th Cir. 2008) (explaining what constitutes protected activity).

[4] Other reasons also exist supporting summary judgment, but the Court finds it unnecessary to discuss every alternative reason for its ruling given that Adams's claims are fundamentally flawed because of the lack of any evidence of unlawful discriminatory or retaliatory motive on the part of the Defendants.